**U.S. BANKRUPTCY COURT FOR THE DISTRICT OF MARYLAND**
(Baltimore Division)

| | |
|---|---|
| In Re: | * |
| Charles R. Faison<br>Debtor | *   Case No.: 06-13072<br>*   Chapter 13 |

\* \* \* \* \* \* \* \* \* \* \* \*

**CERTAIN INTERESTED UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO CERTIFICATE NUMBER TMASHO017075**
1 Great St Helen's
London
EC3A 6HX
United Kingdom

**Plaintiff,**

v.                                                            **Adversary Proceeding No.:**

**CHARLES FAISON**
5209 Bosworth Avenue
Gwynn Oak, MD 21207

And

**INTERCOASTAL INVESTMENT TRUST, LTD.**
104 Church Lane
Suite 201
Baltimore, MD 21208

    **Resident Agent:**

    **Herbert Bergunder, III, Esq.**
    Suite 207
    1501 Sulgrave Avenue
    Baltimore, MD 21209

**Defendants.**

\* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Certain Interested Underwriters at Lloyd's London (*hereinafter*, "Underwriters") subscribing to Certificate Number TMASHO017075, by and through its undersigned counsel, hereby files this Complaint for Declaratory Judgment, and states as follows:

## NATURE OF CLAIM

1. This is an action for declaratory judgment brought pursuant to 28 U.S.C. § 2201 and Fed. Rule Civ. Proc. 57, to declare the rights and other legal relations surrounding questions of actual controversy that presently exist between Plaintiff Underwriters and the Defendant/Debtor, Charles R. Faison (*hereinafter*, "Debtor") and the Defendant, Intercoastal Investment Trust (*hereinafter*, "IIT"). This matter involves a fire loss to property owned by Debtor and insured by Underwriters.

2. Underwriters issued a policy of insurance to Debtor for his property located at 1530 North Payson Street, Baltimore, Maryland (*hereinafter*, "the Property"). On January 11, 2009, a fire caused extensive damage to the Debtor's Property. After the loss occurred, based on Debtor's representations to Underwriters that there was no mortgage on the Property, Underwriters provided insurance coverage to the Debtor for the Property loss. After payment was issued to Debtor, Underwriters discovered that there was an outstanding mortgage on the Property at the time of the loss. However, more importantly, Underwriters was informed that Debtor had filed for bankruptcy and was actively involved in bankruptcy at the time he applied for insurance from Underwriters. When Debtor applied for insurance with Underwriters, he stated that he had never filed for bankruptcy; Underwriters issued a policy of insurance to Debtor based on these misrepresentations.

3. For the reasons stated in this Complaint, Underwriters assert that they had no contractual obligation to provide insurance coverage to Debtor for the fire loss because he made material misrepresentations in his application for insurance regarding both the bankruptcy and the mortgagee, thus, Debtor's policy was void, *ab initio*. Additionally, Underwriters assert that they had no obligation to Debtor's mortgagee, IIT, because IIT had no insurable interest in the Property on the date of the loss, and alternatively, that IIT's interest in any insurance proceeds would be in the form of an equitable lien. If IIT is entitled to an equitable lien on any insurance proceeds in this matter, IIT is also subject to Underwriters' defenses against its insured, including voiding the policy, *ab initio*. Debtor's policy was void at the time of the loss; therefore, Underwriters had no obligation to provide coverage for the Property loss to Debtor and subsequently, no duty to IIT. Finally, because Debtor fraudulently obtained the insurance proceeds from Underwriters, the insurance proceeds can not become property of the bankruptcy estate and should be subsequently returned to Underwriters.

## **PARTIES AND JURISDICTION**

4. This adversary proceeding is being brought in connection with Debtor's case under Chapter 13 of Title 11 of the United States Code, Case No. 06-13072, now pending in this Court.

5. This Court has jurisdiction over this adversary proceeding pursuant to 11 U.S.C. §541, §1115 and Rule 7001.

6. This is a core proceeding under 28 U.S.C. §157. Venue in this District is proper pursuant to 28 U.S.C. §1409.

7. Plaintiff Underwriters are a British entity organized under the laws of the United Kingdom and maintaining their principal place of business in London, England. Plaintiff issued a policy of insurance to the Debtor.

8. On or about May 31, 2006, Debtor filed a voluntary petition captioned *In Re: Charles Faison* (06-13072) in the United States Bankruptcy Court for the District of Maryland for relief pursuant to Chapter 13 of Title 11 of the United States Bankruptcy Code.

9. Upon information and belief, Defendant Intercoastal Investment Trust, Ltd. is a company incorporated in the state of Maryland and maintains its principal place of business at 104 Church Lane, Suite 201, Baltimore, MD 21208 and at all relevant times was authorized to do business in the State of Maryland. Intercoastal Investment Trust was the mortgage holder for the Debtor's Property located at 1530 North Payson Street, Baltimore, MD, 21217. Intercoastal Investment Trust was not named as an insured under Debtor's policy of insurance.

10. Upon information and belief, Defendant/Debtor Charles Faison is an adult resident who formerly resided at 1530 North Payson Street, Baltimore, MD 21217. Upon information and belief, Debtor currently resides in Baltimore City at 5209 Bosworth Avenue, Gwynn Oak, MD 21207 and carries on a regular business, is employed and/or habitually engages in a vocation in Baltimore City, Maryland.

## FACTUAL ALLEGATIONS

11. This matter arises out of a fire loss which occurred at the Property owned by Debtor, located at 1530 North Payson Street, Baltimore, MD 21217.

12. On or about April 17, 2008, Debtor, by and through his insurance agent, solicited Underwriters for a policy of insurance and executed a "Homeowner's Application" for the Property (*hereinafter*, "Homeowner's Application" or "Application"). *See* Exhibit A.

13. On page 2 of the Homeowner's Application, which Debtor signed, Debtor indicated that he had never declared bankruptcy. Debtor also indicated that he was the sole owner of the Property and omitted any mortgagee on the application. Upon information and belief, Debtor received a copy of his signed Homeowner's Application after completion. *See* Exhibit A.

14. On or about April 17, 2008, in reliance upon Debtor's executed Application, Underwriters issued a policy of insurance effective from April 17, 2008 through April 17, 2009. The policy of insurance was underwritten by Tapco Underwriters Inc, (*hereinafter*, "Tapco"). Tapco is an underwriter for the insurance carrier, Certain Interested Underwriters at Lloyd's London (*hereinafter*, "Underwriters"). This insurance policy provided homeowner's coverage for the Property under certificate number TMASHO017075.

15. On or about January 11, 2009, the Property was severely damaged by fire; Debtor subsequently made a claim under his policy of insurance with Underwriters.

16. While Underwriters were investigating the loss, Debtor continued to represent to Underwriters that he was the sole owner of the Property and that there was no outstanding mortgage or liens on the Property.

17. On or about February 5, 2009, based on Debtor's representations to Underwriters, Tapco's Claims Department issued payment to Debtor for the fire loss in the amount of $57,790 ($49,290 for the actual cash value of the Property, $7,500 for contents damage and $1,000 for loss of use).

18. After payment was issued to Debtor, Tapco's Claims Department was informed that Intercoastal Investment Trust, Ltd. ("IIT") held an existing mortgage on the Property.

19. On or about January 15, 2009, Counsel for IIT sent correspondence to Tapco's Underwriting Department requesting that IIT be added as a beneficiary to Debtor's policy of insurance; counsel for IIT indicated that Debtor did not list IIT as a mortgagee on the Property when he applied for insurance.[1] *See* Exhibit B.

20. Counsel for IIT attached a Deed of Trust for the Property and an Assignment of the Deed of Trust to its January 15, 2009 letter to Tapco's Underwriting Department.[2] The Assignment and the Deed of Trust both indicated that the principal amount of the mortgage was $30,000. *See* Exhibit C.

21. When IIT first contacted Tapco's Underwriting Department, the Underwriting Department informed Counsel for IIT that any requests to be added as a beneficiary to Debtor's policy of insurance must originate from Debtor's insurance agent.

22. On or about January 19, 2009, Tapco's Underwriting Department subsequently faxed Debtor's insurance agent indicating that they received a request from IIT to add IIT as a beneficiary to the policy; Tapco's Underwriting Department informed Debtor's insurance agent that all endorsement requests must originate from them. *See* Exhibit D.

23. On or about February 12, 2009, after payment had been issued to Debtor, Debtor's insurance agent faxed Tapco's Claims Department a January 13, 2009 letter from IIT to the

---

[1] Tapco's Claims Department, which issued payment to Debtor for the loss, did not receive notice from IIT of its mortgage, via Debtor's insurance agent, until February 13, 2009, after the loss occurred and payment had been issued to Debtor.

[2] Debtor executed a Refinance Deed of Trust on the property on April 4, 1997. IIT bought the mortgage note for the Property on October 19, 2005. Although IIT held a mortgage interest on the Property since October, 2005, IIT failed to investigate whether Debtor obtained the proper insurance for the Property until January 13, 2009, after the foreclosure sale of the Property (January 12, 2009) and after the fire loss occurred (January 11, 2009).

agent, indicating that IIT was a mortgagee on the Property. Tapco's Claims Department received this fax on or about February 13, 2009. *See* Exhibit E.

24. The February 12, 2009 fax from Debtor's insurance agent was the first notice that Tapco's Claims Department received regarding the mortgage held by IIT on the Property.

25. After Tapco's Claims Department received notice of IIT's mortgage, Counsel for IIT informed Tapco's Claims Department that Debtor had filed for bankruptcy prior to the loss and that IIT was in the process of foreclosing on the Property. Apparently, IIT had petitioned the Bankruptcy Court to foreclose on the Property in March, 2008; IIT's petition was granted in June, 2008 and IIT filed a foreclosure action on the Property in September, 2008.

26. IIT informed Tapco's Claims Department that on January 12, 2009, the day after the fire loss that it foreclosed on the Property. IIT received $27,000 in proceeds from the foreclosure sale. *See* Exhibit F.

27. IIT initially claimed that the insurance proceeds for the fire loss were wrongfully distributed to Debtor and that IIT was actually entitled to these proceeds; IIT subsequently demanded that Underwriters compensate IIT for the fire loss.

28. Once Underwriters were notified of IIT's claims, Underwriters reopened its investigation of Debtor's loss.

29. During its investigation, Underwriters discovered that, contrary to the representations in Debtor's Application for insurance, Debtor had in fact filed for bankruptcy twice and was actively involved in bankruptcy proceedings at that time he applied for insurance with Underwriters. *See* Exhibit G.

30. Had Underwriters been aware of the fact that Debtor was involved in bankruptcy proceedings at the time that he had applied for insurance, Underwriters would not have written or issued the policy of insurance for the Property owned by Debtor. *See* Exhibit H.

31. Once it was discovered that Debtor made material misrepresentations on his Application for insurance, Underwriters advised Debtor that they were returning the premiums he paid under the policy and were voiding his policy of insurance, *ab initio*, from its inception. *See* Exhibit I.

32. Underwriters also informed IIT that, because IIT was not disclosed as a mortgagee on the Application for insurance at the time of the loss, IIT had no interest in the insurance proceeds. *See* Exhibit J.

33. Underwriters indicated to IIT that even if IIT had an insurable interest on the date of loss, its interest would have been extinguished to the extent of insurance proceeds received at the foreclosure sale. Underwriters further informed IIT that IIT would only hold an equitable lien against any insurance proceeds that were paid to Debtor. *See* Exhibit J.

34. Underwriters further indicated that, as the holder of a mere equitable lien, IIT would be subject to any defenses that Underwriters could assert against its insured, including voiding the policy, *ab initio*. Because Underwriters determined that Debtor's policy was void, *ab initio*, based on material misrepresentations in the Application for insurance, Underwriters informed IIT that the policy was also void as to IIT. *See* Exhibit J.

35. Based on the fact that Debtor's policy of insurance was void from its inception, Underwriters demanded that Debtor return all insurance proceeds that were paid to him for the loss. *See* Exhibit I.

36. Debtor has failed and refused to return the insurance proceeds that were fraudulently obtained by him in this matter.

37. A Declaratory Judgment was subsequently filed on Underwriters' behalf in the Baltimore City Circuit Court. The Declaratory Judgment requested a declaration as to Underwriter's rights and obligations under Debtor's policy of insurance as to the fire loss and the insurance proceeds which were wrongfully obtained by the Debtor.

38. After the Declaratory Judgment action was filed, counsel for IIT claimed that the insurance proceeds which were distributed to Debtor were actually property of the bankruptcy estate. IIT further claimed that the Declaratory Judgment action was in violation of the automatic stay in bankruptcy. This position was contrary to IIT's original position regarding the insurance proceeds in this matter, as IIT initially claimed that it was the rightful owner of any insurance proceeds generated by the fire loss, due to its outstanding mortgage on the Property.

39. Counsel for IIT subsequently requested that the Trustee presiding over Debtor's bankruptcy estate take a position regarding whether the insurance proceeds belonged to the estate.

40. Recently, the Trustee for Debtor's bankruptcy estate declared that the insurance proceeds are in fact property of the bankruptcy estate; the Trustee subsequently demanded that Debtor turn over all insurance proceeds to the Trustee.

41. However, Underwriters assert that the insurance proceeds can not become property of the bankruptcy estate because the policy was void, *ab initio* due to Debtor's material misrepresentations on his Application for insurance.

42. Therefore, Underwriters seek a declaration that Debtor's misrepresentations on his Application for insurance were material, thus voiding the policy, *ab initio*, and entitling Underwriters to the return of all insurance proceeds that were fraudulently obtained by Debtor.

43. In addition, Underwriters further seek a declaration that it owes IIT no duty because, at the time of the loss, IIT was not a mortgagee, or otherwise a beneficiary under the policy and thus had no insurable interest. In the alternative, Underwriters assert that, any interest that IIT may have had in the insurance proceeds, which were fraudulently obtained by the Debtor, would have been limited to an equitable lien. As the holder of a mere equitable lien, IIT is also subject to any defenses that Underwriters can assert against its insured, including voiding the policy. Because the policy was void as to Debtor, IIT is also subject to this defense and Underwriters owe IIT no duty.

## ACTUAL CONTROVERSY

44. An actual and justiciable controversy exists among the parties as to the nature and extent of Underwriters' obligation and/or liability, if any, to Defendant/Debtor, Charles Faison and Defendant, Intercoastal Investment Trust, Ltd. under the policy of insurance.

## COUNT I

**(Declaratory Judgment – Charles Faison Made Material Misrepresentations on His Application for Insurance, Thus Voiding His Policy, *Ab Initio*)**

45. Underwriters incorporate by reference paragraphs 1-44 as if fully set forth herein.

46. At the time that Debtor applied for insurance with Underwriters he stated that he had never filed for bankruptcy.

47.     In fact, at the time that Debtor had filled out and signed his Application for insurance, he had filed for bankruptcy twice, in February, 2006 and May, 2006.[3] *See* Exhibit G.

48.     Debtor also represented in his Application to Underwriters that he was the sole owner of the Property and that there was no outstanding mortgage. Debtor repeated these assertions during Underwriters' investigation of the loss.

49.     Debtor reviewed his Application for insurance and signed it, thereby certifying that the information provided was true, correct and complete. Further, by his signature, Debtor agreed that the information in the Application was the basis of the contract of insurance.

50.     Underwriters relied upon the information provided by Debtor in issuing the policy in question and would not have issued the policy had Debtor provided the material, accurate, and honest information in his Application. In particular, Underwriters would not have issued the policy in question, which was created upon the expectation of risk associated with a homeowner who was not involved in bankruptcy proceedings, if Debtor had correctly informed Underwriters that he was in fact involved in bankruptcy proceedings. *See* Exhibit H.

51.     Debtor's misrepresentations regarding the fact that he had never filed for bankruptcy were material to Underwriters' decision to issue the policy of insurance in this matter. *See* Exhibit H.

52.     Debtor misrepresented material information to Underwriters during the application process, therefore, the policy is void, *ab initio*; Underwriters have since returned Debtor's insurance premiums and have voided Debtor's policy of insurance, *ab initio*. Underwriters are thus entitled to the return of insurance proceeds that were fraudulently obtained by Debtor in this matter.

---

[3] Debtor filed for bankruptcy in February, 2006 (Case No. 06-10807); this action was dismissed for "noncompliance." Debtor's petition for bankruptcy in May, 2006 (Case No. 06-13072) was accepted and is ongoing at the present time.

## COUNT II

**(Declaratory Judgment – Intercoastal Investment Trust, Ltd is not Entitled to Insurance Proceeds)**

53. Underwriters incorporate by reference paragraphs 1-52 as if fully set forth herein.

54. On or about January 15, 2009, after the fire loss, but prior to payment to Debtor, IIT contacted Tapco's Underwriting Department to add IIT as a beneficiary to Debtor's policy of insurance.

55. Tapco's Underwriting Department subsequently informed IIT that all such requests must go through Debtor's insurance agent.

56. On or about January 19, 2009, Tapco's Underwriting Department notified Debtor's insurance agent of IIT's request. *See* Exhibit D.

57. Although IIT contacted Tapco's Underwriting Department, it failed to notify Tapco's Claims Department of the mortgage on the Property until after payment had already been issued to Debtor.

58. Debtor's insurance agent failed to notify Underwriters of the request to add IIT as a beneficiary until after payment had already been issued to Debtor.

59. On or about February 13, 2009, after payment had been issued to Debtor for the loss, based on his fraudulent statements to Underwriters, Tapco's Claims Department was notified by Debtor's insurance agent that IIT was a mortgagee on Debtor's Property.

60. Regardless of the fact that IIT attempted to be added as a beneficiary to the policy prior to the issuance of payment to Debtor, because IIT was not listed as a beneficiary on the policy of insurance at the time of the loss, Underwriters informed IIT that it had no insurable interest in the Property and was not entitled to receive any insurance proceeds from Underwriters. *See* Exhibit J.

61. Underwriters also indicated that, even if IIT had any interest in the proceeds at the time of the loss, IIT's loss would have been limited to the deficiency remaining after application of the foreclosure proceeds received from the foreclosure sale, in the amount of $27,000. *See* Exhibit J. The principal mortgage on the Property was $30,000 at the time of the loss which would have left a balance of $3,000 remaining on IIT's mortgage after applying the foreclosure proceeds. *See* Exhibit C.

62. However, regardless of whether IIT could demonstrate an insurable interest on the date of the fire loss, Maryland law indicates that, because IIT was not listed as a beneficiary on the policy of insurance at the time of the loss, IIT's interest is limited to, at most, an equitable lien. *See* Exhibit J.

63. If IIT is entitled to an equitable lien, Maryland law indicates that IIT is also subject to any defenses that Underwriters can assert against its insured. Because Underwriters determined that Debtor's policy of insurance was void, *ab initio*, Underwriters had no duty to provide coverage to Debtor for the loss to the Property, and consequently, owe no duty to IIT, based on its mere equitable lien status. *See* Exhibit J.

64. Therefore, based on the fact that the policy is void, *ab initio*, IIT is not entitled to receive any insurance proceeds in this matter.

WHEREFORE, Plaintiff respectfully requests:

- A. That this Court declare the rights, duties, and obligations of the parties under the policy of insurance issued to Charles Faison by Certain Interested Underwriters at Lloyd's London;

- B. That this Court declare that Charles Faison's policy of insurance is void due to his material misrepresentations on his Application for insurance.

C. That this Court declare that, because Charles Faison's policy of insurance is void, the bankruptcy estate is not entitled to any of the insurance proceeds which were fraudulently obtained by Charles Faison.

D. That this Court declare that, because Charles Faison's policy of insurance is void, Intercoastal Investment Trust, Ltd. is not entitled to any of the insurance proceeds which were fraudulently obtained by Charles Faison.

E. That this Court declare that Certain Interested Underwriters at Lloyd's London are entitled to the return of the insurance proceeds which were fraudulently obtained by Charles Faison, as the policy of insurance was void at the time of the loss.

F. That this Court grant further relief as the justice of the cause may require, including, but not limited to, the costs and attorneys' fees in bringing this action.

Respectfully submitted,

/s/
Jeffrey A. Wothers (Bar No. 09439)
NILES, BARTON & WILMER, LLP
111 South Calvert Street
Suite 1400
Baltimore, Maryland 21202
(410) 783-6300
*Counsel for Plaintiff, Certain Interested Underwriters at Lloyd's London*

ND: 4847-3608-7043, v. 1